1
2
3
4
5

Shellie McGaughey, WSBA #16809
Michael Kyllo, WSBA #51412
McGaughey Bridges Dunlap, PLLC
3131 Western Avenue, Suite 410
Seattle, Washington 98121
Ph: 425-462-4000
Shellie@mcbdlaw.com
Mike@mcbdlaw.com

6

HONORABLE TIFFANY M. CARTWRIGHT

7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15
16
17

JULIE JAMAN,

                    Plaintiff,

        v.

CITY OF PORT TOWNSEND,
WASHINGTON; JOHN MAURO, in his
official and personal capacities; THE
OLYMPIC PENINSULA YMCA; WENDY
BART. In her official and personal capacities;
ROWEN DELUNA, in her official and
personal capacities; ERIN HAWKINS, in her
official and personal capacities; and JOHN
DOES 1–10, in their official and personal
capacities,

                    Defendant.

NO: 3:24-CV-05466-TMC

DEFENDANTS OLYMPIC PENINSULA
YMCA, WENDY BART, ROWEN
DELUNA, AND ERIN HAWKINS' FED. R.
CIV. P. (12)(b)(6) MOTION TO DISMISS

NOTED:  DECEMBER 10, 2024

18
19
20
21
22
23
24
25

## I.     RELIEF REQUESTED

COMES NOW defendants Olympic Peninsula YMCA, Wendy Bart, Rowen DeLuna, and

Erin Hawkins (hereinafter collectively referred to as "YMCA") and moves to dismiss Plaintiff's

claims on grounds that Defendants were not state actors as required under 42 U.S.C. § 1983.

YMCA's answer states Ms. Jaman failed to state a claim upon which relief could be

granted.   YMCA respectfully requests this motion to dismiss be granted as a Motion for

Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) or per 12(b)(6).  Defendants do not

DEFENDANTS OLYMPIC PENINSULA YMCA,
WENDY BART, ROWEN DELUNA, AND ERIN
HAWKINS'S MOTION TO DISMISS -1-
3:24-CV-05466-TMC

McGaughey Bridges Dunlap, PLLC
3131 Western Ave, Suite 410
Seattle, WA 98121
(425) 462 - 4000
Facsimile (425) 637 - 9638

1  rely on any documents outside of the pleadings.

2  **II.    OVERVIEW**

3  Plaintiff Julie Jaman has brought six causes of action, three of which are against the

4  moving Defendants who seek dismissal.[1]

5  Ms. Jaman's lawsuit arises after Olympic Peninsula YMCA ("YMCA") removed and

6  permanently banned her for violating its Code of Conduct after she verbally abused a transgender

7  YMCA staff member using vulgar language in front of several young children.  Ms. Jaman

8  claims the YMCA violated her constitutionally protected rights under the First and Fourteenth

9  Amendments to Free Speech, Due Process, and Equal Protection.

10  Ms. Jaman brings these Constitutional challenges as a civil action pursuant to 42 U.S.C. §

11  1983.  To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right

12  secured by the Federal Constitution or statutory law, and (2) allege that the deprivation was

13  committed by a person acting under color of state law.  *Anderson v. Warner*, 451 F.3d 1063,

14  1067 (9th Cir. 2006); *citing West v. Atkins*, 487 U.S. 42, 48, (1988).

15  This motion to dismiss is solely on the issue of the second element: deprivation was

16  committed by a person acting under color of state law.  *Id.*

17  For the YMCA to be liable under 42 U.S.C. § 1983, it must have been acting under

18  "color of state law" at the time of the alleged Constitutional Violation: her removal and

19  permanent ban from the YMCA on July 26, 2022.  Most of Ms. Jaman's factual allegations are

20  of post-ban conduct.  Ms. Jaman makes no factually possible allegations of conduct before July

21  26, 2022.

22  Ms. Jaman attached 29 exhibits (816 pages) to her Complaint.  Ms. Jaman has voluntarily

23  incorporated those exhibits into the pleadings.  "If a complaint is accompanied by attached

24
25

---

[1] The other three causes of action allege intentional torts solely against the City of Port Townsend.  Dkt. 1, Complaint, paras. 123-139.  This motion will not address those causes of action.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -2- 3:24-CV-05466-TMC**

McGaughey Bridges Dunlap, PLLC
3131 Western Ave, Suite 410
Seattle, WA 98121
(425) 462 - 4000
Facsimile (425) 637 - 9638

1 | documents, the court is not limited by the allegations contained in the complaint." *Durning v.*
2 | *First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); citing *Amfac Mortgage Corp. v.*
3 | *Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429–30 (9th Cir.1978).  "These documents are part
4 | of the complaint and may be considered in determining whether the plaintiff can prove any set of
5 | facts in support of the claim." *Id*.

6 |     Defendants Wendy Bart, Rowen DeLuna, and Erin Hawkins were all employees of
7 | Olympic Peninsula YMCA and were acting within the scope of their employment at all times
8 | alleged in the Complaint.  The authority for determining whether a person or entity was acting
9 | under the color of state law is the same for all four moving Defendants.

10 | ### III.    PERTINENT FACTS[2]

11 |     Olympic Peninsula is a local affiliate of the YMCA (Young Men's Christian
12 | Association). Dkt. 1, Complaint, para. 2.  The YMCA is a private non-profit corporation.  *Id*.
13 | The YMCA operates a pool.  *Id*.  Beginning in October 2021, the YMCA took operational
14 | control over an existing pool structure located at 1919 Blaine St, Port Townsend, WA.  Ex. 3
15 | attached to Complaint, Dkt. 1-2, Management Agreement, p. 623.[3]

16 |     On July 26, 2022, Ms. Jaman went for a swim at the subject pool.  Dkt. 1, Complaint,
17 | para. 40.  Ms. Jaman claims after her swim she saw YMCA employee Clementine Adams and
18 | another YMCA employee accompanying day-camp children in the restroom.  *Id*. at para. 45; also
19 | Ex. 20, Dkt. 1-3, Mtn View Pool Incident, p. 54.  Ms. Jaman confronted Clementine Adams and
20 | asked, "do you have a penis?" before ordering her to "Get out of here!"  Dkt. 1, Complaint, para.
21 | 46. "Within seconds" Rowen DeLuna learned of what happened and banned Ms. Jaman from the

[2] All facts herein are derived from plaintiff's pleadings**.**

[3] YMCA is only using Ms. Jaman's complaint and her attached exhibits.  When YMCA references an exhibit number, it corresponds to the exhibit number Ms. Jaman filed.  Additionally, instead of citing the exhibit page number, YMCA cites the Docket number.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -3- 3:24-CV-05466-TMC**

Mᴄɢᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

pool 'for life' and told her to leave.  *Id*. at para. 47.  This interaction is the basis for Ms. Jaman's Constitutional Violations.  *Id*. at paras. 91, 110, 118.

Plaintiff alleges the YMCA's actions on July 26, 2022, were under the color of state law. *Id*. at paras. 23, 19, 20, 21.  Various documents Ms. Jaman attaches to her Complaint evidence that this bare assertion is impossible.

**First**, the YMCA entered into a Management Agreement with the City of Port Townsend (Hereinafter "City"); Ms. Jaman attached this agreement to the Complaint as Exhibit 3.  Dkt. 1, Complaint, para. 27; <u>see</u> Ex. 3, Management Agreement, Dkt. 1-2, p. 623.

The Management Agreement states the YMCA has full "discretion and control in all matters relating to the management and operation of the Pool, including, without limitation, staffing decisions, employment policies, [etc.]."  *Id*.  No government entity has authority or influence over YMCA's management and operation decisions.  <u>See</u> *Id*.

Additionally, the Management Agreement gives the YMCA the sole discretion to exclude any person from the pool.  Ex. 3, Dkt. 1-2, Management Agreement, p. 625.  Cited below is from Section 3.e titled "License and Access" of the Management Agreement:

> [The YMCA license] includes the right to set its own rules and policies regarding access to the Pool and its facilities, and to exclude any person from using the Pool, its facilities and equipment, subject to any code, statute, or law prohibiting such exclusion.

*Id*.  In other words, if a code, statute, or law does not prohibit YMCA's ability to exclude "any person from using the pool, its facilities and equipment" the YMCA (as a private entity) has full license to do so.  *Id*.  The City did not restrict YMCA's rights as a private entity or grant additional authority that a private entity otherwise would not have.  <u>See</u> *Id*.

**Second**, Ms. Jaman attaches the Mt. View Pool Code of Conduct as Exhibit 9.  The YMCA implemented its standard YMCA Code of Conduct and required all patrons to abide by it.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -4- 3:24-CV-05466-TMC**

M<small>C</small>G<small>AUGHEY</small> B<small>RIDGES</small> D<small>UNLAP</small>, PLLC
3131 W<small>ESTERN</small> A<small>VE</small>, S<small>UITE</small> 410
S<small>EATTLE</small>, WA 98121
(425) 462 - 4000
F<small>ACSIMILE</small> (425) 637 - 9638

See Ex. 9, Dkt. 1-3, Mt. View Pool Code of Conduct, p. 23-24.  No one was allowed entry without first presenting ID and being added to the database.  *Id*.  Stated in the Mt. View Pool Code of Conduct are some of the rules patrons agree to:

**When you access YMCA facilities and/or programs, you agree to:**

1. Uphold the YMCA core values of caring, respect, honesty, and responsibility.

2. Provide an atmosphere free of discrimination, hatred, derogatory or unwelcome comments, intimidation, conduct or actions of sexual nature, or actions based on an individual's sex, race, ethnicity, age, religion, disability, sexual orientation, or any other legally protected status.

3. Be respectful of and cooperative with YMCA staff, lifeguards, and others.

4. Adhere to all YMCA guidelines and codes of conduct.

**YMCA staff reserve the right to refuse service and membership to anyone who violates any of these guidelines.**

*Id*.; see also Dkt. 1, Complaint, para. 37.  Also listed in the Mt. View Pool Code of Conduct, YMCA states the following will not be tolerated at its facilities and/or programs:

1. Disrespectful words or gestures towards YMCA staff or others.

2. Abusive, harassing and/or obscene language or gestures towards YMCA staff or others.

3. Threats of harm, physical aggression or violent acts towards YMCA staff or others.

[…]

8. Offensive and unlawful conduct towards YMCA staff or others.

DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -5- 3:24-CV-05466-TMC

MCGAUGHEY BRIDGES DUNLAP, PLLC
3131 WESTERN AVE, SUITE 410
SEATTLE, WA 98121
(425) 462 - 4000
FACSIMILE (425) 637 - 9638

**YMCA staff reserve the right to refuse service and membership to anyone who is not courteous and kind.**

*Id.*[4]  YMCA's right to refuse service is granted through its status as a private entity and not by a city granted power.  See Dkt. 1-2, Management Agreement, p. 623-633.

      The facts above were not hidden from Plaintiff.  Rather, Plaintiff quoted much of the above in her Complaint.

      Plaintiff further admits YMCA had "day-to-day operations of the pool," that YMCA is a "private entity," and YMCA had "the right to set its own rules and policies regarding access to the pool and its facilities, and to exclude any person from using the pool."  Dkt. 1, Complaint, para. 28, 29.  Despite those admissions, Plaintiff still alleges "The YMCA's operation of the pool is state action." Id.  That bare assertion is not factually possible.

      The City has no involvement in the YMCA's operation of the pool.  Ms. Jaman states as much in her Complaint.  Dkt. 1, Complaint, para. 33 ("Under the management agreement the Pool is managed and operated exclusively by the YMCA.").

      Instead of genuine factual allegations, Plaintiff includes all the buzzwords for state action and states the elements of her claim as if those satisfy as factual contentions.  They do not.  When describing the parties in her Complaint, this is how Ms. Jaman describes the YMCA:

> Although the YMCA is a private entity, it was engaged in state action for all relevant purposes: It was managing government property (the Pool) in a symbiotic relationship with the City and in furtherance of a public function, and City and YMCA officials were engaged in a conspiracy, had a close nexus, and participated in joint action regarding the response to the incident that occurred on July 26, 2022, as alleged herein.

Dkt. 1, Complaint, para. 17.  Words like "symbiotic relationship," "public function," "close

---

[4] Ms. Jaman claims her Due Process rights were violated because she was deprived a protected right without notice. The YMCA grants the above notice to all who use the pool.  However, Defendants do not move on this issue.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -6- 3:24-CV-05466-TMC**

MᴄGᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

1    nexus," and "joint action" are all different portions of the test for whether a private entity's action

2    is under color of state law.  Those above quoted buzzwords appear nowhere else in Plaintiff's

3    Complaint.  See Dkt. 1, Complaint.

4         Ms. Jaman's allegations of a conspiracy between Wendy Bart, CEO of Olympic Peninsula

5    YMCA and John Mauro, City Manager of the City of Port Townsend are only allegations of

6    conduct after July 26, 2022.  A mere allegation "the City had the power to reverse YMCA's

7    decision" but eventually "ratified the YMCA's ban" does not create a claim against the YMCA.

8         This allegation is not factually possible based on Ms. Jaman's 816 pages of exhibits, and

9    she cites none of them to support her claims against the YMCA.  First, the Management

10   Agreement grants the YMCA full and exclusive control over who to exclude from the pool.  Ex.

11   3, Dkt. 1-2, Management Agreement, p. 625; see also Ex. 9, Dkt. 1-3, Mt. View Pool Code of

12   Conduct, p. 24.  Second, the Management Agreement does not grant the City power to reverse

13   YMCA's decisions.  Id.  Third, in internal City emails, provided by Ms. Jaman, Mr. Mauro says

14   he believes the YMCA is "allowed to make [the decision] given our operations agreement."  Ex.

15   10, Dkt. 1-3, City Email, p. 28; Ex. 3, Dkt. 1-2, Management Agreement, p. 623-625.  The City

16   never had the ability to overturn YMCA's decision, and never ratified the YMCA's ban, and Ms.

17   Jaman's documents contradict her assertions.  Regardless of the City's actions or inactions, the

18   YMCA acted pursuant to its authority under the Management Agreement and its Code of

19   Conduct.  Id.; see also Ex. 9, Dkt. 1-3, Mt. View Pool Code of Conduct, p. 24.

20        Ms. Jaman also alleges YMCA acted under the color of state law because it must meet

21   certain obligations to the City.  Essentially, she alleges the YMCA must abide by restrictions or

22   standards uniquely imposed by a government entity because of its joint action.  However, there is

23   only one quotation in the Complaint to the 816 pages of exhibits, which requires "compliance

24   with all applicable laws."  Dkt. 1, Complaint, para. 33.  Requiring compliance with applicable

25   laws is not an additional obligation nor does it create a claim.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS** -7- **3:24-CV-05466-TMC**

McGaughey Bridges Dunlap, PLLC
3131 Western Ave, Suite 410
Seattle, WA 98121
(425) 462 - 4000
Facsimile (425) 637 - 9638

1

## IV.    AUTHORITY

2

### A.    Motion to Dismiss For Failure to State a Claim Standard

3       FRCP 12 states a court may grant a motion to dismiss for failure to state a claim upon

4  which relief may be granted.  Fed. R. Civ. P 12(b)(6).  While a complaint attacked by a Rule

5  12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

6  provide the grounds of her entitle[ment] to relief requires more than labels and conclusions, and a

7  formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*,

8  550 U.S. 544, 555 (2007) (internal citations omitted).

9       "In practice, a complaint … must contain either direct or inferential allegations respecting

10 all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*

11 at 562.  "The tenet that a court must accept a complaint's allegations as true is inapplicable to

12 threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

13 *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); citing *Twombly* at 555.  Factual allegations must be

14 enough to raise a right to relief above the speculative level.  *Twombly* at 555.  "Pleading must

15 contain something more than a statement of facts that merely creates a suspicion of a legally

16 cognizable right of action."  *Id.*  Determining whether a complaint states a plausible claim is

17 context specific, requiring the court to draw on its experience and common sense.  *Iqbal* at 663-

18 64.[5]

19 \\\

20 \\\

21 _____

22 [5] Observing the possibility this motion is converted to a motion for judgment on the pleadings, "a motion for judgment on the pleadings is substantially identical to a motion to dismiss for failure to state a claim under Federal

23 Rule of Civil Procedure 12(b)(6) because both permit challenges to the legal sufficiency of the opposing party's pleadings. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N. D Cal. 2002). Judgment on the pleadings is appropriate when, accepting as true all material allegations contained in the nonmoving party's

24 pleadings, the moving party is entitled to judgment as a matter of law. *Torbet v. United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir. 2002)." *Feliz on behalf of Est. of Clevenger v. Cnty. of Orange*, 2011 WL 13130897 (C.D. Cal.

25 Dec. 7, 2011).

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -8- 3:24-CV-05466-TMC**

MᴄGᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

**B.**    <u>Determining Whether a Private Entity Acts Under the Color of State Law.</u>

As a preliminary matter, Ms. Jaman admits YMCA is a private entity.  Dkt. 1, Complaint, paras. 2, 17, & 29.    It is undisputed the YMCA is a private entity and not a state or local government.[6]

As a matter of substantive Constitutional Law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982); *citing Flagg Brothers*, 436 U.S., at 156, 98 S.Ct., at 1733.  The Supreme Court has long held that "merely private conduct, however discriminatory or wrongful," falls outside the purview of the Fourteenth Amendment.  *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020); <u>citing</u> *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982).

**1.** <u>Distinction Between an Equal Protection Violation and a § 1983 Claim.</u>

For Constitutional violations, one can bring either an Equal Protection Clause claim or a 42 U.S.C. § 1983 action.  The Fourteenth Amendment, Equal Protection Clause, requires "state action" and a § 1983 claim requires a private party to act "under color of state law."  The Equal Protection Clause can be used to invalidate laws, policy, or government action, while § 1983 is an avenue for civil action.

Ms. Jaman mentions both the Equal Protection Clause and 42 U.S.C. § 1983 in her complaint.  Each of Ms. Jaman's three causes of action against the YMCA cites "42 U.S.C. § 1983" as authority for this civil suit for damages.  She does not allege a law, policy or government action it wishes to be overturned.

The remainder of this motion will address whether YMCA acted "under the color of state

---

[6]  <u>See Id.; see also</u> Washington State Corporate Entity Business Information for the YMCA, Corporations and Charities System, showing that the YMCA has been a licensed charitable, non-profit Washington organization since 1948.  The Court is entitled to take judicial notice of this fact pursuant to FRE 201.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -9-
3:24-CV-05466-TMC**

MᴄGᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

law" as required for a § 1983 claim.[7]

To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the Federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006); *citing West v. Atkins*, 487 U.S. 42, 48, (1988).

Ultimately, the inquiry is always whether the "defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020); <u>citing</u> *West v. Atkins*, 487 U.S. 42, 49 (1988). The vital requirement is "State responsibility—that somewhere, somehow, to some extent, there be an infusion of conduct by officials, panoplied with State power, into any scheme" that deprives a person of their rights. *Terry v. Adams*, 345 U.S. 461, 473, 73 S. Ct. 809, 97 L. Ed. 1152 (1953).

To determine whether a private party's action amounts to state action, The Supreme Court has articulated four tests: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013); *citing Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). The "public function" and "joint action" tests largely subsume the state compulsion and governmental nexus tests. *Ohno* 723 F.3d 984, 996 n.13 (9th Cir. 2013)[8].

### 2. <u>Public Function Test</u>:

The Public Function Test exists when "private individuals or groups are endowed by the State with powers or functions *governmental in nature*, they become agencies or instrumentalities

---

[7] Because plaintiff can bring Equal Protection and 1983 claims together, generally authority uses the terms "state actor" and "under color of state law" interchangeably.

[8] YMCA recognizes this cite is to a footnote. However, Ms. Jaman alleges a "symbiotic relationship with the city" and "furtherance of a public function" which will later show are the primary elements for the "joint action" and "public function" test. Additionally, the 9th Cir. has made this point in footnotes multiple times. <u>See also</u> Wright 48 F.4th 1112, n.6.

MᴄGᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

of the State and subject to its constitutional limitations." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (internal citation omitted)(emphasis added).

Citing *Kirtley*, "the public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924-25 (9th Cir. 2011). There are "very few" functions the court has recognized as traditionally and exclusively a governmental task. *Wright v. Serv. Employees Int'l Union Local 503*, 48 F.4th 1112, 1124 (9th Cir. 2022); citing *Flagg Brothers*, 436 U.S., at 156 (while many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State').

Serving the public does not make an action a traditional and exclusive public function. Tennessee Secondary School Athletic Association (TSSAA) regulated interscholastic sports for Tennessee public and private high schools. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001). The Supreme Court held "The TSSAA no doubt serves the public, particularly the public schools, but the mere provision of a service to the public does not render such provision a traditional and exclusive public function. *Id*. at 309.

### 3.  Joint Action Test:

A joint action between a state and a private party may be found in two scenarios: the government either "(1) 'affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party,' or (2) 'otherwise has so far insinuated itself into a position of interdependence with the non-governmental party,' that it is 'recognized as a joint participant in the challenged activity.'" *Wright* at 1123, citing *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020), quoting *Ohno* at 996.

From *Belgau*, the state must "provide significant assistance to the *underlying* acts that the [plaintiff] contends constituted the core violation of its First Amendment rights." *Belgau* at 947-

DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -11-
3:24-CV-05466-TMC

McGaughey Bridges Dunlap, PLLC
3131 Western Ave, Suite 410
Seattle, WA 98121
(425) 462 - 4000
Facsimile (425) 637 - 9638

48 (emphasis added).  *Belgau* also states "a merely contractual relationship between the government and the non-governmental party does not support joint action; there must be a 'symbiotic relationship' of mutual benefit and 'substantial degree of cooperative action.'  *Id.* at 948.  No significant interdependence exists unless the government in a meaningful way accepts benefits derived from the allegedly unconstitutional actions.  *Id.*

## V.    ARGUMENT

It is important to identify Ms. Jaman's allegations against the YMCA Defendants. Plaintiff alleges the act of removing Ms. Jaman and banning her from the facility violates 42 U.S.C. § 1983.  YMCA must have been acting under color of state law at the time of the alleged Constitutional violation.  Therefore, the actions under scrutiny are those that *preceded* Jaman's removal and permanent ban from the YMCA for violating its Code of Conduct.

For the reasons stated the YMCA does not satisfy the requirements under the Public Function or Joint Actor tests to have acted under the color of state law.

Ms. Jaman provides no support for her 42 U.S.C. § 1983 claim.  To the extent Ms. Jaman has made factual allegations they either show a merely contractual relationship between YMCA and the City, or they are rendered factually impossible by the documents in her pleadings.

### 1.    Defendants Did Not Act Under Color of State Law Under the Public Function Test.

The Public Function Test can be satisfied when "private individuals or groups are endowed by the State with powers or functions *governmental in nature*, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley* at 1093.

Ms. Jaman must show the YMCA's function is "both traditionally *and* exclusively governmental." *Florer*, 639 F.3d 916, 924-25 (emphasis added).

The YMCA operates a pool.  The YMCA's management of the pool is not a "public function" because pool management is neither traditionally nor exclusively a government

DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -12-
3:24-CV-05466-TMC

MCGAUGHEY BRIDGES DUNLAP, PLLC
3131 WESTERN AVE, SUITE 410
SEATTLE, WA 98121
(425) 462 - 4000
FACSIMILE (425) 637 - 9638

function, let alone *both* a traditional and exclusive government function.

Governments do not routinely or traditionally manage pools, and the management of a pool is not an exclusively governmental task.  No authority supports this bare allegation that operating a pool amounts to state action.  Plaintiff's bare assertion that operating a pool is a traditionally and exclusively governmental function is unfounded and insufficient to survive a motion to dismiss.

To the extent Ms. Jaman argues the pool is operated for the benefit of the public[9], *Brentwood Academy* has held that alone does not render its action a traditional and exclusive public function.  *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 309 (2001).

### 2.   Defendants Did Not Act Under Color of State Law Under the Joint Actor Test.

As mentioned above, the Joint Actor Test can be satisfied when the government either: "(1) 'affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party,' or (2) 'otherwise has so far insinuated itself into a position of interdependence with the non-governmental party,' that it is 'recognized as a joint participant in the challenged activity.'" *Wright*, 48 F.4th at 1123.  Plaintiff must show more than a "*merely contractual relationship* between the government and the non-government party." *Belgau* 975 F.3d 940 at 948 (Emphasis added).

#### A.   No government or its agent has affirmed, authorized, encouraged, or facilitated Plaintiff's alleged unconstitutional conduct.

The City of Port Townsend has not affirmed, authorized, encouraged, or facilitated the removal of Ms. Jaman for a pattern of code of conduct violations.  Ms. Jaman has not alleged any such conduct.

---

[9] Defendants do not concede that this YMCA benefits the public more than any other YMCA.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -13-**
**3:24-CV-05466-TMC**

MᴄGᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

1    Even if Ms. Jaman had alleged governmental conduct, it is not possible based on Ms.

2    Jaman's recollection of the events.  Based on the nature of the allegations, Rowen DeLuna heard

3    yelling and use of vulgar language in front of young children in the locker room and once inside,

4    she learned of Ms. Jaman's actions.  Dkt. 1, Complaint, paras. 46, 47. "Within seconds" Ms.

5    DeLuna told Jaman she was banned "for life" and told her to leave. *Id*. at 47.

6    In the "seconds" it took for Ms. DeLuna to ban Ms. Jaman, it is not possible she received

7    governmental affirmation, authorization, encouragement, or facilitation of Ms. Jaman's ban.

8    Plaintiff's bare assertion that YMCA "participated in joint action regarding the response

9    to the incident that occurred on July 26, 2022" is baseless and without evidence.  Dkt. 1,

10    Complaint, para 17.  It is virtually identical to the dismissal of the "formulaic recitation of the

11    elements" of Twombly's pleadings.  Here identically to Iqbal, "Rule 8 does not empower

12    respondent to plead the bare elements of [her] cause of action […] and expect [her] complaint to

13    survive a motion to dismiss." *Iqbal* at 687.

14
15            **B.    The City Has Not Asserted Itself Into a Position of "Interdependence"
                      With the YMCA To Be In Joint Participation *in the Challenged
16                    Activity*.**

17    To establish its alleged "conspiracy" between the YMCA and the City, Ms. Jaman states a

18    symbiotic relationship between YMCA and the "City."

19    Again, Ms. Jaman has not alleged any communication between Mr. Mauro and the above-

20    named moving Defendants before Plaintiff's removal and banning from the YMCA.

21    Not only is there no indication of communication or cooperation between a City official

22    and the YMCA, but "interdependence" must be *in the challenged activity*.  Meaning any City

23    official would have to play a role in any violation of Jaman's Constitutional rights, not just a

24    common interest in running the pool.  Ms. Jaman has not claimed the City was involved in the

25    *challenged activity*. She does not claim any "collusion" existed before her banning.

**DEFENDANTS OLYMPIC PENINSULA YMCA,
WENDY BART, ROWEN DELUNA, AND ERIN
HAWKINS'S MOTION TO DISMISS -14-
3:24-CV-05466-TMC**

M<small>C</small>G<small>AUGHEY</small> B<small>RIDGES</small> D<small>UNLAP</small>, PLLC
3131 W<small>ESTERN</small> A<small>VE</small>, S<small>UITE</small> 410
S<small>EATTLE</small>, WA 98121
(425) 462 - 4000
F<small>ACSIMILE</small> (425) 637 - 9638

Reasonable minds can only conclude a lack of interdependence or joint participation.  Per the Management Agreement, the YMCA has full discretion to operate the Pool in accordance with its own rules and regulations.  Ex. 3, Dkt. 1-2, Management Agreement, p. 623-25.

### C.      Defendants have merely a contractual relationship with the City of Port Townsend.

Ms. Jaman shows merely a contractual relationship between the government and the YMCA.  *Belgau* is clear "a merely contractual relationship between the government and non-governmental party does not support joint action." *Belgau* 975 F.3d at 948.

The Management Agreement is the only connection between the YMCA and the City which is a purely contractual relationship.

The YMCA entered into a leasing agreement with the City to fully manage and operate the pool.  Dkt. 1-2, Ex. 3, Management Agreement, p. 623-24.  This agreement gives the YMCA full discretion to "control in all matters relating to the management and operation of the Pool, including, without limitation, staffing decisions, employment policies, [etc.]." *Id*. at 623.  The YMCA had full control over the operation of the pool and instituted its own rules/code of conduct.  Dkt. 1-3, Ex. 9, Code of Conduct, p. 24.

Ms. Jaman has not made any factually possible allegations of a "substantial degree of cooperative action" where the state "provide[s] significant assistance to the underlying acts" that make up the Constitutional violation.

## VI.      CONCLUSION

Plaintiff has failed to state a claim upon which relief can be granted against the YMCA Defendants.  Based on the pleadings, the documentation shows simply a contractual relationship between the YMCA and the City, which is legally insufficient to establish liability against a private actor under 42 U.S.C. § 1983.  Ms. Jaman has not alleged facts that could result in a prevailing legal action, and her conclusory statements of state action do not create a claim.

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -15- 3:24-CV-05466-TMC**

MᶜGᴀᴜɢʜᴇʏ Bʀɪᴅɢᴇs Dᴜɴʟᴀᴘ, PLLC
3131 Wᴇsᴛᴇʀɴ Aᴠᴇ, Sᴜɪᴛᴇ 410
Sᴇᴀᴛᴛʟᴇ, WA 98121
(425) 462 - 4000
Fᴀᴄsɪᴍɪʟᴇ (425) 637 - 9638

1         *Iqbal* dismissed recitals of cause of action elements based on mere conclusory statements.

2   At no point does Ms. Jaman provide a single, plausible, factual allegation that supports a cause of

3   action against the YMCA.  She cites no supporting facts from the 816 pages of exhibits attached

4   to her Complaint.   Regardless, none of them support Plaintiff's bare allegations; instead, the

5   Complaint exhibits contradict them.  As such, Plaintiff is without factual support creating a viable

6   42 U.S.C. § 1983 claim against the moving Defendants, who respectfully request that the Court

7   grant their motion to dismiss.

8         DATED this 12th day of November, 2024.

9                 McGAUGHEY BRIDGES DUNLAP, PLLC

10

11                 */s/Shellie McGaughey*
              Shellie McGaughey, WSBA #16809

12                 Michael Kyllo, WSBA #51412

13                 Attorneys for Defendants Olympic Peninsula
              YMCA, Wendy Bart, Rowen DeLuna and Erin

14                 Hawkins

15                 LEWIS BRISBOIS BISGAARD & SMITH LLP

16

17                 */s/ Kaytlin Leigh Carlson*
              Christopher E. Hawk, WSBA #43307

18                 Jason Harrington, WSBA #45120

19                 Kaytlin Leigh Carlson**,** WSBA #52606
              1111 Third Ave Suite 2700

20                 Seattle, WA 98101
              Ph: 206-876-2968

21

22                 Attorneys for Defendants Olympic Peninsula
              YMCA, Wendy Bart, Rowen DeLuna and Erin

23                 Hawkins

24

25

**DEFENDANTS OLYMPIC PENINSULA YMCA,
WENDY BART, ROWEN DELUNA, AND ERIN
HAWKINS'S MOTION TO DISMISS -16-
3:24-CV-05466-TMC**

M C G AUGHEY  B RIDGES  D UNLAP , PLLC
3131 WESTERN AVE, SUITE 410
SEATTLE, WA 98121
(425) 462 - 4000
FACSIMILE (425) 637 - 9638

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

<u>CERTIFICATE OF SERVICE</u>

The certify that on the below date I electronically filed the follow document:

**DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS**

with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Rosemary Schurman, WSBA #11451
rbschurman@aol.com
rbschurman@msn.com

Harmeet K. Dhillon, *pro hac vice*
Harmeet@libertycenter.org

Josh Dixon, *pro hac vice*
jdixon@libertycenter.org

Eric Sell *pro hac vice*
esell@libertycenter.org

Amanda Bley Kuehn, WSBA #42450
akuehn@lldkb.com

Elizabeth McIntyre, WSBA #25671
emcintyre@lldkb.com

Christopher E. Hawk, WSBA #43307
Chris.Hawk@lewisbrisbois.com

Jason Harrington, WSBA #45120
jason.harrington@lewisbrisbois.com

Kaytlin Leigh Carlson**,** WSBA #52606
Kaytlin.carson@lewisbrisbois.com

DATED this 12th day of November, 2024.


____/s/Emily Rayborn_____
Emily Rayborn, Paralegal

DEFENDANTS OLYMPIC PENINSULA YMCA, WENDY BART, ROWEN DELUNA, AND ERIN HAWKINS'S MOTION TO DISMISS -17-
3:24-CV-05466-TMC

M C GAUGHEY  BRIDGES  DUNLAP, PLLC
3131 WESTERN AVE, SUITE 410
SEATTLE, WA 98121
(425) 462 - 4000
FACSIMILE (425) 637 - 9638